■ In the Matter of ROBERT APRILE et al., Respondents, v MICHAEL LO GRANDE, as Supervisor of the Town of Islip, et al., Appellants. — In a proceeding pursuant to CPLR article 78 to review a determination of the Town Board of the Town of Islip, which revoked a special permit previously granted to petitioner Aprile for the operation of a discotheque, the appeal is from a judgment of the Supreme Court, Suffolk County (McInerney, J.), entered September 18, 1981, which annulled the determination. Judgment reversed, on the law, with costs, determination to revoke the permit confirmed, and proceeding dismissed on the merits. The petitioners, Robert Aprile and the

Mata Hari Disco, Inc., operate Hammerheads, a "night spot" with live rock bands in the Town of Islip. On August 28, 1979 the town board had granted petitioner Aprile a special permit to operate an expanded discotheque with "a 'D.J.' or an announcer using requested records and a [sic] cable-live music". The permit was subject to a declaration of covenants and restrictions, among which were the following relevant provisions, included to protect the adjacent residential neighborhood: "7. The special permit shall be in effect for one (1) year. Thereafter, it shall continue in effect unless complaints about the operation of the discotheque are received by the Town of Islip. If the complaints are shown to violate the covenants, a public hearing will be held to determine whether the permit shall be revoked. * * * 11. There shall be no vehicular access from Kane Street at any time. * * * 13. Soundproofing shall be provided on the premises to the extent that no noise from the premises will be heard by any of the surrounding residences. * * * 16. That the subject property shall be used for a discotheque with attendant facilities, and that the improvement of the premises for the aforesaid purpose must be commenced within eight months after the date of the grant and completed within eighteen months after the date of the grant. If not so commenced and completed within the period, then, at the option of the Town Board of the Town of Islip, after due public hearing, the said special use permit herein shall lapse and be of no further force and effect." The petitioners did not seek judicial review of the restrictions and commenced operating the facility on December 12, 1979. Live rock bands provided the music. Thereafter the Town of Islip received complaints and anti-Hammerheads petitions from residents in the surrounding neighborhood. The town board scheduled a public hearing for September 18, 1980 and issued a notice that renewal of the special permit would be considered. At the conclusion of the hearing the town board voted to revoke the special permit. The petitioners sought review of the board's action in an article 78 proceeding and were successful on the ground that the notice was inadequate. Special Term determined that the notice failed to specify that the nature of the hearing was revocation of the permit rather than renewal. It directed that a new notice be provided and that a new public hearing be conducted. The parties then chose a mutually convenient date for the public hearing and a notice was issued which stated: "[T]he Town Board of the Town of Islip will hold a public hearing * * * to consider revoking the Special Permit issued to Robert Aprile on August 29, 1979 * * * for the operation of a discotheque * * * pursuant to the Order of the Supreme Court dated February 20, 1981, the terms of the Special Permit, the covenants and restrictions specified there, and as a result of complaints received concerning the operation of the premises and which if substantiated, would be grounds for revocation of the Special Term * * * [and] that copies of written complaints received are on file in the Office of the Town Clerk." Prior to the hearing the petitioners were served with all the complaints received by the town board concerning Hammerheads and the transcript of the prior hearing. At the start of the public hearing, the petitioners again challenged the sufficiency of the notice and requested that the witnesses be sworn and that the petitioners be permitted to cross-examine them. The comments were accepted for the record but the chairman denied the requests. During the hearing numerous witnesses testified in favor of revocation and the transcript of the prior hearing was incorporated into the record. The testimony given at both hearings falls into three categories: (1) that the petitioners were not operating a discotheque but, rather, a rock concert hall; (2) that the petitioners' operation was a nuisance in that it attracted youths who were making noise, causing disruption, committing crimes and vandalizing property in the parking lots used by Hammerheads and in the adjacent residential community; and (3) that the petitioners

had violated the restrictive covenants concerning noise control and local street access. After the petitioners had presented witnesses and experts in their favor, the town board resolved to revoke the special permit for the following reasons: "(1) Noise of the music from within the premises can be and has been heard by the surrounding residents; (2) The premises has not been operated as a discotheque pursuant to the said Special Permit but is used and has been used since its opening as a rock club or rock concert hall; (3) Access from Kane Street has been intermittently but regularly permitted. All of the above reasons violate the Special Permit and the covenants and restrictions filed by the applicant. Moreover, the use of the premises has resulted in numerous incidents of criminal conduct directly attributable to the patrons of Hammerheads, thereby creating a hazard and nuisance as to the public in general. The permittee has failed to submit credible information adequate to rebut evidence adduced at the public hearing with regard to these violations." The petitioners thereupon commenced the instant article 78 proceeding. They contend that the town board's decision was not supported by substantial evidence and that it was arbitrary and capricious. They also assert that the board's public notice was inadequate and that the hearing procedure violated the terms of the restrictive covenant and the petitioners' right to due process. Special Term agreed. It found that the notice was defective in that it failed to provide the petitioners with a detailed statement of the charges. It also found that the failure to swear witnesses and the denial of the opportunity to cross-examine them violated the petitioners' right to due process. Finally, the court held that the decision of the town board was arbitrary and capricious and was not supported by substantial evidence. We do not agree. The petitioners were not deprived of due process by the form of the notice in this case. The notice complied with the earlier court decision and the terms of the restrictive covenant to which the petitioners agreed. It warned the petitioners that if the complaints made by the public were substantiated, their special permit could be revoked. The public was informed that the complaints were on file and the petitioners were provided with copies of the complaints. Under these circumstances, there was no need for the notice to contain specific charges or designate the covenants allegedly violated. Due process does not mandate that notice follow a rigid format. It requires only that the petitioners be sufficiently informed so that they are not surprised and therefore unprepared to rebut the evidence againt them. The petitioners make no such claim in this case. However, the notice was defective in that it failed to inform the petitioners that they would have to defend against general nuisance allegations unrelated to the covenant restrictions. In addition the notice did not indicate that the town itself was challenging the facility's status as a discotheque based on its use of live bands. There is no indication in the record that any complaints were received concerning the use of bands rather than records and all testimony on this issue was given by town employees. Thus, those portions of the board's findings based on nuisance and the failure to maintain a discotheque are not proper. We find also that the petitioners were not deprived of their rights by the board chairman's refusal to swear witnesses or allow cross-examination of them. In this case, the declaration of covenants and restrictions specified that a public hearing would be held to consider revocation on complaints related to violations of the restrictions. Thus, the petitioners agreed to a public hearing. A public hearing is not a formal quasi-judicial hearing which requires the swearing of witnesses or cross-examination of them (see *Matter of Muscillo v Town Bd. of Town of Oyster Bay,* 28 Misc 2d 79). Finally, we cannot agree that the board's determination is arbitrary and capricious or that it is not supported by substantial evidence. The covenants required that the premises be sound-proofed and that access through local streets be prevented. There was testi-

mony that people in the surrounding residences were awakened by the music from Hammerheads and that the gate barring access to Kane Street was left open. This testimony was refuted unsuccessfully by the petitioners. Thus the board acted reasonably in determining that there were violations of the restrictions and in revoking the permit. Gibbons, J. P., Thompson, Rubin and Boyers, JJ., concur.