OPINION OF THE COURT
Harold Tompkins, J.
In this proceeding, the court reviews the process of agency *414 contract disqualification and the required level of cooperation by a contractor operating in corporate form. Petitioner Arc Plumbing seeks to annul a determination of the respondent Board of Responsibility on May 29, 1986 that found it a nonresponsible bidder as a result of false and misleading answers given on its bid application for the plumbing work at the White Street detention facility and the indictment of Anthony Gurino, its sole stockholder and president, on charges of obstruction of justice involving the concealment of assets of Salvatore Ruggiero (according to the indictment which is annexed to the papers), before his death, reputedly a prominent member of organized crime in New York City.
The Board also found a pattern of evasiveness and inaccuracy in the documents Arc submitted in connection with bid applications and a lack of proper and adequate supervision by Arc management in filling out required forms. Finally, the Board found Arc to be noncooperative by the failure of its president and sole stockholder, Anthony Gurino, to answer questions regarding his indictment, the underlying relationship with Mr. Ruggiero and the failure to produce as witnesses John Gotti, according to the city’s papers, a leading member of an organized crime family in New York and a salesman for Arc, and Paul Gonzalez whom Arc claimed resigned immediately prior to his scheduled appearance.
Arc Plumbing had initiated this proceeding seeking a writ of prohibition restraining the city from preventing its work on plumbing contracts for Shea Stadium. This court in July 1986 declined to dismiss the petition as moot in light of the Board’s nonresponsibility determination and directed the bid information be supplied to Arc. Thereafter, Arc sought to amend to directly challenge the Board’s determination and the city consented to the amendment. This court may therefore review now on the underlying merits of this matter.[1]
*415 The petitioner challenges the determination of nonresponsibility on several grounds — due process relating to the adequacy of the notice, penalization for invocation of the self-incrimination privilege, the composition and authority of the Board, the conduct of the hearings, as well as the rational support for the agency’s finding.
DUE PROCESS
Adequate notice is a prerequisite to fundamental fairness that underlies due process, and this requirement is applicable in the administrative hearing process (Matter of Murray v Murphy, 24 NY2d 150 [1969]; Matter of Hecht v Monaghan, 307 NY 461 [1954]). There must be an adequate specification of charges and complaints to be reviewed so that Arc Plumbing could be aware of the claims asserted and able to properly defend itself (see, Matter of Alvarado v State of New York, Dept. of State, Div. of State Athletic Commn., 110 AD2d 583 [1st Dept 1985]; Matter of Aprile v Lo Grande, 89 AD2d 563 [2d Dept 1982]).
In this case, the Board advised Arc that Mr. Gurino’s indictment and the bid submission as well as specific questions on the experience questionnaire were at issue. At the hearing Michele Day, the secretary who filled out the forms, testified about the manner in which the forms were filled out. By checking off corporate status, she and Mr. Gurino believed questions relating to Grand Jury testimony, indictments, financial interests, officer status and board membership in other businesses related solely to Arc and not to Mr. Gurino, its president and owner, who signed the application. She also testified that she completed this application, like all others Arc submitted, by the rote copying of information from earlier forms. This knowledge of the process of filling out forms is attributable to Arc Plumbing and the notice of hearing which raised the bid application therefore adequately apprised Arc Plumbing to defend itself. To the extent that inconsistencies in other applications were used at the hearing for purposes other than impeachment, their consideration by the Board, except as noted above for the manner of filling out forms, was improper. Numerous questions were also raised relating to Mr. Gurino’s other financial interests. The financial relationships of Mr. Gurino were properly raised by the notice given. *416 The financial connections with Mr. Ruggiero are the underlying acts charged in the indictment and were thus properly before the Board and capable of being considered.
SELF-INCRIMINATION
At the hearing, Mr. Gurino refused to answer various questions relating to the indictment under his privilege against self-incrimination. His right to decline to testify is protected by both the Federal and State Constitutions (US Const 5th Amend; NY Const, art I, §6). The exercise of this right may not be used to penalize Mr. Gurino (Lefkowitz v Turley, 414 US 70 [1973]). In this case the entity held accountable for Mr. Gurino’s failure to testify is Arc Plumbing, a corporation. It is well settled that the privilege is a personal one and, accordingly, a corporation has no Fifth Amendment right (Campbell Painting Corp. v Reid, 392 US 286 [1968]; Matter of Moe v Kuriansky, 120 AD2d 594 [2d Dept 1986]). This applies even if the corporation is owned by a sole shareholder as in this case (State of New York v Carey Resources, 97 AD2d 508 [2d Dept 1983]). The Board is therefore entitled to consider a corporation’s failure to produce evidence and entitled to consider failure to do so as noncooperation.
COMPOSITION AND AUTHORITY OF THE BOARD
The challenge to the Board of Responsibility’s composition, including pursuant to the Board of Estimate regulation[2] a member of the agency as one of the three members of the Board, runs against the long-established administrative law procedure that permits combination of adjudicative and investigative functions (Withrow v Larkin, 421 US 35 [1975]; Matter *417 of Young v Board of Educ., 100 AD2d 515 [2d Dept 1984]). The conduct of the hearing, while spirited, does not reflect either bias by the agency member on the Board or personal knowledge and involvement by the agency member on the Board prior to the hearing (Matter of Young v Board of Educ., supra; Matter of Pelaez v Waterfront Commn., 88 AD2d 443 [2d Dept 1982]).
RESPONSIBILITY
The Board’s ultimate finding in this case was that Arc Plumbing was not a responsible bidder. It based this finding on the noncooperation of Mr. Gurino, Arc’s president, the failure to call John Gotti, an Arc salesman and, according to the city’s papers, the leader of an organized crime family, and Paul Rodriguez as witnesses,[3] the evasive manner it found Arc had used in answering questions in the bid application, the laxity in supervision by Arc management of filling out documents to be filed in connection with bid applications and the documents’ inaccuracy as they were often filled out without attempts to gather true facts but were merely copied from earlier forms or filled in arbitrarily with false information, and lastly, Mr. Gurino’s indictment. There was conflict on certain of the above factual findings but there was a rational basis in the evidence for the agency’s findings (Matter of Bentley v Perales, 103 AD2d 1005 [4th Dept 1984]). The laws on competitive bidding are intended to protect the general public by securing honest competition resulting in the lowest prices to the public agency and thereby to the taxpayer (Matter of Conduit & Found. Corp. v Metropolitan Tr. Auth., 66 NY2d 144 [1985]; Matter of Clancy-Cullen Stor. Co. v Board of Elections, 98 AD2d 635 [1st Dept 1983]). Responsibility permits the agency to consider the moral integrity, trustworthiness, judgment and background of the bidder as well as the more purely economic values of skill, performance and cost (Abco Bus Co. v Macchiarola, 75 AD2d 831, 833-834 [2d Dept 1980], Hopkins, J., dissenting, revd on dissenting opn 52 NY2d *418 938 [1981], cert denied 454 US 822 [1981]; Matter of Lord Elec. Co. v Litke, 122 Misc 2d 112 [Sup Ct, NY County 1983]). The behavior of Arc employees and Mr. Gurino, its president and sole shareholder, and Mr. Gurino’s indictment reflect on Arc Plumbing’s integrity. As a corporation, Arc operates through the actions of its officers and employees. Their normal business practices of inaccurate and evasive filling out of forms, and lax supervision call into question the corporation’s judgment and integrity. Particularly in this case involving a wholly owned corporation, run by its sole shareholder, the corporation’s integrity is intertwined with that of its sole owner and manager.
The court considers this attribution to be reasonable and therefore it finds the agency’s determination of nonresponsibility to be rationally based and nonarbitrary.
PENALTY IMPOSED
The penalty of three years’ suspension for all city contracts is reviewable under the test of whether it is so disproportionate to shock the conscience (Kostika v Cuomo, 41 NY2d 673 [1977]; Matter of Pell v Board of Educ., 34 NY2d 222). In view of the above findings, the court cannot say the penalty imposed was so excessive as to be arbitrary and consequently it is upheld. The request for a rehearing is within the agency’s reasonable discretion. Considering the prior findings of document irregularity and the findings on Arc’s trustworthiness, the agency was within its reasonable discretion in declining to permit a rehearing for evidence and testimony capable of being produced at the hearing and for witnesses who testified at the hearing to further explain themselves.
Accordingly, the petition is dismissed.

. The court notes that at oral argument both parties agreed that since the petition sought to annul the agency determination as arbitrary and capricious, the petition did not require transfer to the Appellate Division pursuant to CPLR 7804 (g). It is plain, however, that any determination that lacks substantial evidence to support would necessarily be an arbitrary and capricious decision (see, Matter of Pell v Board of Educ., 34 NY2d 222 [1974]; Matter of Furey v County of Suffolk, 105 AD2d 41 [2d Dept 1984]). A decision supported by a rational basis in the evidence and inferences reasonably drawn therefrom should be upheld as nonarbitrary (300 Gramatan Ave. Assocs. v State Div. of Human Rights, 45 NY2d 176 [1978]). The court’s role is limited to review of the rationality and legality of the agency’s actions. This deference is based on the administrative expertise of the agency, the agency’s role in policy determination and the limits properly inherent in the judiciary.

. The Board of Estimate is an agency of the New York City government that regulates city property, contracts and has concurrent power with the Mayor and the City Council in the budgetary process. Though its power is extensive, it is not plenary in either the legislative or executive administrative spheres. The Board’s regulation 5 (c) extended nonresponsibility to include noncooperation and increased the penalty for nonresponsibility to a maximum three-year disbarment from all city contracts. This administrative action was in furtherance of the purpose of General Municipal Law § 103 to enhance honest competition (see, Conduit & Found. Corp. v Metropolitan Tr. Auth., 66 NY2d 144). The challenge to the constitutional makeup of the Board of Estimate as not adequately reflecting the one man, one vote principle (Morris v Board of Estimate, 647 F Supp 1463 [ED NY 1986]), does not affect the validity of its resolutions (supra, at 1479; Buckley v Valeo, 424 US 1, 142 [1976]). In any event pursuant to CPLR 217 and its four-month Statute of Limitations, any such challenge is untimely.

. The failure to call employee witnesses by a party reasonably leads to inferences as to the unfavorable nature of the testimony that they may give. The Board may appropriately rely on reasonable inferences in making its determination. The Board was also capable of evaluating the sudden resignation of Mr. Gonzalez after Arc promised he would appear. As CPLR 2302 (a) provides subpoena power to an attorney in an administrative proceeding, Arc’s attorneys had the opportunity to subpoena witnesses subject to any application to quash.