■ ABCO BUS CO., INC., Respondent, v FRANK J. MACCHIAROLA, Individually and as Chancellor of the Board of Education of the City of New York, et al., Appellants.—In a proceeding pursuant to CPLR article 78 to compel the Board of Education of the City of New York (board) to award petitioner, Abco Bus Co., Inc. (Abco), a transportation contract, the appeal is from a judgment of the Supreme Court, Kings County, entered September 7, 1979, which awarded Abco the contract on condition that one of its shareholders, Lawrence Paladino, divest himself of his interest in the corporation. Judgment affirmed, without costs or disbursements. Abco was formed in 1971. It had a total of three shareholders: Lorenzo Lampazi, who owned 50% of its shares, and Lawrence Paladino and Jacqueline Greenberg, each of whom owned 25% of the shares. Since 1971 Abco had been satisfactorily transporting handicapped children for the board of education pursuant to a contract that had an expiration date in June, 1979. Prior thereto the board invited bids for the transportation of handicapped pupils for the period of September, 1979, through June, 1982. Under sections entitled "Award," the proposals, *inter alia,* stated the following: "The award of Contract, if made, will be made according to law, as soon after the opening of bids as practicable, by item, to the lowest *responsible* bidder offering the lowest weighted average daily rate per vehicle for extended and regular service as specified in each item." (Emphasis supplied.) Abco submitted a bid pursuant to the proposal which turned out to be a successful low bid on the routes in issue. The board then had the New York City Department of Investigation do a background check on the principals of Abco. On May 9, 1979 the Department of Investigation conducted a hearing as a result of which it was established that only Lampazi was involved in the day to day operations of Abco; that he had been convicted in 1970 of falsifying information on a 1964 application for a Federal Housing Administration loan (he used the loan proceeds to pay doctor bills arising from his wife's pregnancy rather than for the

stated purpose of modernizing his home); and that in 1975 he had been arrested and charged with the offense of driving while intoxicated which was disposed of by a conditional discharge and a $100 fine. As to Paladino, the Department of Investigation learned that in 1971 he pleaded guilty to a charge of possession of stolen property and was fined $250; that in 1976 he was convicted of income tax evasion and conspiracy involving the use of extortion to obstruct interstate commerce; and that in 1978 he violated his probation by associating with individuals having criminal records. Subsequent to the completion of the investigation the board informed Abco, first orally and then by letter dated June 29, 1979, that it would not "be receiving an Award of Contract." Abco sought and received administrative review of the denial. Moreover, Abco offered to have Paladino divest himself of his interest in the company if that would enable it to be awarded the contract.* Nevertheless, the board adhered to its position stating that principals of Abco have records of criminal convictions and that disqualification of bidders with such problems is being uniformly applied. Thereupon, in August, 1979, Abco commenced this proceeding asserting that the board was acting arbitrarily and capriciously in refusing to award it a contract. A trial was held, the record of which shows that 1979 was the first year in which the board had instructed the Department of Investigation to investigate the backgrounds of successful bidders and that in June, 1979 the board established an internal policy that it would be reasonable to deem a corporate bidder "irresponsible" if any of its principals had a criminal record. More significantly, the evidence adduced showed that other bidders were awarded transportation contracts although their principals also had criminal records. Based on the foregoing, we conclude that the board acted arbitrarily and capriciously in refusing to award a contract to Abco. It is clear that a board of education has the authority and duty to award contracts for the transportation of school children to the lowest responsible bidder in accordance with the best interests of the school district involved (cf. Education Law, § 305, subd 14, par a; General Municipal Law, § 103, subd 1). We of course agree with the board that in determining whether a low bidder is responsible, moral character, including prior criminal activities, depending on their nature, is a valid criterion (see *Matter of Dellwood Foods v Board of Educ.,* 97 Misc 2d 751; *Matter of Limitone v Galgano,* 21 Misc 2d 376). In *Varsity Tr. v Saporita* (71 AD2d 643, affd 48 NY2d 767) we recognized the wide authority vested in the board to make contract proposals that are required by the public interest. However, fundamental fairness requires that once such proposals are drawn and bid on, the board abide by its proposals and treat bidders uniformly. The board, by its February 22, 1979 invitation for bids, required that the bidder be responsible. Abco, having satisfactorily served the board since 1971, had every right to assume that it was responsible and that its effort in making the bid would not be for naught. Nowhere did the board indicate that a bid would be rejected because a principal of the bidder had a criminal record. For this reason we cannot countenance the application of the standard which the board seeks to impose on Abco. We are fortified in this view by the long satisfactory service Abco rendered the board, and by the fact that the crimes with which Abco's principals were charged are not of a type which make it clear that Abco is unable to

---

* We note that Abco has not cross-appealed from the judgment under review nor is Paladino a party to this proceeding. Therefore we have not addressed ourselves to whether Special Term erred in conditioning the award of the contract to Abco on Paladino's divesting himself of his interest in the firm.

responsibly or safely transport school children. Finally, any doubt as to the arbitrariness of the board's action is obviated by its acceptance of bids from other corporations whose principals have records of criminal activities. Accordingly, we affirm the judgment appealed from. Damiani, Titone and Martuscello, JJ., concur.

Hopkins, J. P., dissents and votes to reverse the judgment and to dismiss the proceeding on the merits, with the following memorandum: A municipal contract subject to the requirements of public bidding must be awarded to the lowest responsible bidder (General Municipal Law, § 103). In determining the lowest bidder, the municipal agency charged with the function is rightfully concerned with the bidder's responsibility—an elastic word which includes considerations of skill, judgment and integrity. Hence, the background of the bidder may be properly investigated by the municipal agency (*Matter of Futia Co. v Office of Gen. Servs. of State of N. Y.,* 39 AD2d 136). Unquestionably, the board of education, in determining the petitioner's responsibility, was entitled to take into account the criminal record of its principals (see *Matter of Zara Contr. Co. v Cohen,* 23 AD2d 718; cf. State Finance Law, § 139-b; General Municipal Law, § 103-b). Hence the board of education, upon finding that two of the stockholders of petitioner, owning between them 75%* of the corporate stock, had criminal records, could rationally determine that the petitioner was not the lowest "responsible" bidder. Once a rational basis for that determination is found to exist, the court's power to interfere in the award of a contract arising out of the bidding process is ended. Reasonable men may differ as to the criteria which the municipal agency adopts in determining the responsibility of bidders, but it is the reason of the municipal agency, not the reason of the court, which prevails (*Matter of Caristo Constr. Corp. v Rubin,* 15 AD2d 561, affd 10 NY2d 538; *Matter of Kayfield Constr. Corp. v Morris,* 15 AD2d 373, 379). I see no grounds for the petitioner's claim that the board's action was irrational, because previous administrations of the board had not disqualified the petitioner from bidding and had awarded a contract to it. Surely, board policies are always subject to change, as conditions change; and no bidder can claim a vested interest in the bidding on the theory that new policies cannot bind a bidder who has previously performed a contract. To stultify the board by such a limitation thwarts the exercise of the function confided exclusively to it of properly providing for the transportation of the city's students. Nor do I see on this record a pattern of discrimination by the board which prejudiced the petitioner. In the first instance, the character and extent of the criminal record of the petitioner's stockholders is a matter to be weighed by the board; what the criminal record of other bidders may be is equally a matter for the board. A court should not substitute its judgment of what is or is not significant in the background of the bidders which bears critically on their responsibility. Certainly, the background of the principals of the petitioner provided reason enough for

---

* One, a 50% stockholder, had been convicted in 1970 of the crime of falsifying information on a Federal Housing Administration loan application, and sentenced to six months in jail; he had also been charged in 1975 for driving while intoxicated, for which the disposition was a conditional discharge and $100 fine, which had been paid. The other stockholder, owning 25% of the stock, had been convicted in 1976 both of conspiracy, involving the obstruction of interstate commerce, and of income tax evasion; in 1970 he had also been convicted of possession of stolen property and fined $250.

the petitioner's disqualification. In any event, I cannot find any warrant in the provision of the judgment permitting the award of the contract to the petitioner on the condition that one of the two implicated stockholders shall sell his stock within six months and not participate in the affairs of the petitioner. That provision, it seems to me, clearly violates the rule that the court may not force the municipal agency by the manipulation of the bidder's stock ownership into accepting as the lowest responsible bidder one which has been found on rational grounds by the agency not to be responsible. For these reasons, I dissent and vote to dismiss the petition. [100 Misc 2d 712.]