OPINION OF THE COURT
Smith, J.
In this CPLR article 78 proceeding challenging a determination to deny registration of a contract with a municipal agency, the issues are (1) whether the New York City Comptroller’s objection to the registration of the subject contract was timely and (2) whether the refusal of the Comptroller and the Mayor to register the contract was arbitrary and capricious.
On December 1, 1992, after public solicitation of bids, appellant DeFoe Corporation and American Bridge Company, a joint venture (Joint Venture)[1] was awarded New York City Contract No. HBX644 (the contract), for repairs to the Madison Avenue Bridge based on its bid price of $34,093,799.[2] On or about March 24,1993, respondent New York City Department of Transportation (NYCDOT) submitted the contract to the New York City Comptroller (Comptroller) for registration. NYCDOT withdrew the contract on April 20, 1993, prior to registration, indicating a need to reconsider "the appropriateness of pursuing registration of the contract” in light of new information received pertaining to DeFoe Corp. (DeFoe). The Comptroller responded to NYCDOT’s withdrawal of the contract in an 11-page letter, dated April 26, 1993, from Elizabeth Lang, Special Counsel— Investigations to Steven Pacheco, Director, Contract Management, Bureau of Bridges, NYCDOT. The letter cited information, relating specifically to DeFoe and its principals, that NYCDOT should thoroughly consider "in determining the responsibility of the DeFoe/ American Bridge Company joint *758 venture”. The Comptroller’s office followed up the first letter to NYCDOT with two additional letters (April 29, 1993 and May 7,1993) between Lang and Pacheco, each providing more information on DeFoe for NYCDOT to consider while making its determination.
After its withdrawal of the contract from the Comptroller, NYCDOT entered into negotiations with appellant to address concerns and objections and remove potential barriers to registration respecting appellant’s responsibility status. A "Responsibility Certification,”[3] dated November 19, 1993, resulted from these discussions, by which DeFoe agreed to limit the involvement of five persons associated with DeFoe, four of whom who had previously been convicted of criminal tax violations involving DeFoe.[4]
NYCDOT resubmitted the contract to the Comptroller on December 1, 1993. The Comptroller objected to the registration of the contract and notified the Mayor of her objection in a letter dated December 30, 1993. Specifically, the Comptroller objected that two of DeFoe’s principals who had previously been convicted of fraud might still play an integral part in DeFoe’s operations. Additionally, the Comptroller objected to appellant’s failure to disclose prior statutory and OSHA violations on its VENDEX Business Entity Questionnaire.[5] Moreover, the Comptroller expressed concern that DeFoe had *759 an outstanding Federal civil tax lien, in excess of $5 million and possibly as much as $11 million, which DeFoe was contesting. With respect to the Federal tax liability, DeFoe indicated that a portion of the contested liability related to illegal payments made to minority construction worker groups seeking to extort money. DeFoe, however, declined to identify any of the recipients of such payments or provide any further information regarding the payments. Based on the Comptroller’s objection, in a letter dated March 25, 1994, the Mayor refused to require registration of the contract.
Joint Venture commenced this article 78 proceeding by order to show cause, dated April 4, 1994, seeking an order (1) vacating the New York City Mayor’s decision denying registration of Joint Venture’s publicly bid contract as arbitrary and capricious and (2) declaring that the City Comptroller’s objection to the registration of the contract was untimely.
Supreme Court denied appellant’s petition and dismissed the proceeding, finding that the Comptroller’s objection was timely and rational. The court stated that under section 328 of the New York City Charter and related statutes, the contract registration procedure may not be circumvented by allowing an agency to withdraw a contract before registration. After rejecting appellant’s argument that the Comptroller’s objection was untimely because it was not filed within 30 days of NYCDOT’s initial submission, Supreme Court concluded that appellant waived any objection to NYCDOT’s removal of the instant contract by working with NYCDOT to eliminate any hurdles that might impede the contract’s registration and the subsequent resubmission of the contract to the Comptroller for registration. Further, citing Matter of Pell v Board of Educ. (34 NY2d 222, 231), the court found the Mayor’s denial of registration rationally based on the Comptroller’s timely and sound objection. The court found appellant’s declination to provide the identity of the parties involved in the extortion scheme a sufficient basis for objection under section 328 of the New York City Charter.
The Appellate Division unanimously affirmed for the reasons stated by the Supreme Court. This Court granted leave to appeal.
Appellant maintains that (1) the Comptroller’s objection to registration upon which the Mayor’s determination not to require registration was based was untimely filed and (2) the *760 Mayor’s decision to deny registration of the contract was arbitrary and capricious, particularly in light of the approval of three other contracts for repairs to bridges in 1992.[6]
This Court’s review of this article 78 proceeding is limited, inter alla, to "whether a determination was made in violation of lawful procedure, was affected by an error of law or was arbitrary and capricious or an abuse of discretion” (CPLR 7803 [3]; Matter of Pell v Board of Educ., 34 NY2d 222, supra). Because we find that the Comptroller and the Mayor performed a lawful duty and there was no showing that they acted in an arbitrary or capricious manner, we affirm the order of the Appellate Division.
Chapter 13 of the New York City Charter establishes the rules for procurement of New York City contracts. Section 328 provides for the registration of City contracts by the Comptroller and authorizes the Comptroller to object to the registration of a contract within 30 days of the date of filing of such contract with the Comptroller’s office (NY City Charter § 328 [c]).[7] If the Comptroller has not objected within 30 days, the contract is deemed registered (NY City Charter § 328 [a], [c]). Although a contract has been awarded by a municipal agency, such contract is not effective until it has been registered (NY City Charter § 328 [a]; see also, Procurement Policy Board Rules, 9 RCNY 2-08 [c] [3]; 5-07 [b]).[8]
Appellant maintains that the 30-day period within which the Comptroller had to object to the registration of appellant’s contract began on March 24, 1993, when NYCDOT initially *761 submitted the contract for registration.[9] Although NYCDOT withdrew the contract prior to the expiration of the 30 days, appellant maintains that the 30-day period was tolled when the contract was withdrawn and recommenced once NYCDOT resubmitted the contract in December 1993. To do otherwise, appellant maintains, would circumvent the statutory time limitations. This argument is rejected.
Appellant’s contract was withdrawn at NYCDOT’s instigation, before the expiration of the Comptroller’s statutory grant of time to object. Withdrawal and resubmission by the procuring agency of a contract that has previously been awarded begins anew the statutory time within which the Comptroller has to object to registration. As in the instant case, a resubmitted contract may include additional information not previously before the Comptroller in the initial submission. In addition, appellant waived any objection to the timeliness of the Comptroller’s decision by working with NYCDOT, after the contract was withdrawn, to remove potential barriers to registration.
Appellant’s further contention that the Comptroller and the Mayor acted in an arbitrary and capricious manner in denying registration of the contract is similarly rejected. The Mayor’s determination not to require registration of the contract was rational and based on the Comptroller’s sound objection to registration.
As the independently elected official responsible for insuring agency compliance with the rules and polices for the procurement of City contracts, the Comptroller appropriately reviewed information supplied by appellant in support of its contract bid. Specifically, the Comptroller reviewed information contained in several required disclosure forms determining that appellant "fail[ed] to disclose material facts called for by [the forms]”. The Comptroller pointed out appellant’s failure to disclose the names of all of its corporate officers, particularly Jay M. Haft, Esq. Allegedly a long-time associate of Dario Cioti, Haft is a director of DeFoe and also the sole trustee of a Dario Cioti Blind Trust which holds 100% of the outstanding shares of DeFoe owned by Cioti. In a letter dated April 29, 1993, from Elizabeth Lang to Steven Pacheco, the Comptroller’s office expressed concern regarding Mr. Haft’s relationship *762 with Dario Cioti because as "sole trustee, Mr. Haft was responsible for electing the directors of the company and, as a result, in a very real sense, DeFoe’s management appeared to be subject to the control of Mr. Cioti’s long-term associate Mr. Haft”.[10] In another letter between these same parties, dated May 7, 1993, the Comptroller also cited appellant’s failure to disclose OSHA and other statutory violations.
The Comptroller further questioned the ownership of DeFoe and the record of business integrity of those controlling DeFoe.[11] As a basis for this inquiry, the Comptroller, in a letter between Lang and Pacheco, dated April 26, 1993, noted that on its VENDEX Business Entity Questionnaire, DeFoe indicated that four of its principals (Dario Cioti, Louis Bonomini, Hugo Cantamessa, and John Amicucci) had pleaded guilty in 1988 and 1990 to personal income tax evasion. These crimes, as a sentencing memorandum submitted by the Government in the case against Dario Cioti and his wife Marie Cioti revealed, involved an elaborate tax evasion scheme whereby fraudulent receipts and invoices were used to divert funds from DeFoe to sham corporations and back to DeFoe’s principals and members of their families. These funds, although reported by DeFoe as business expenses, were never reported by the recipients as income. All four persons apparently maintain contact with DeFoe and its business operations.
Additionally, the Comptroller noted DeFoe’s admission of illegal extortion payments, in the 1980’s, to minority construction worker groups to insure labor peace. More importantly, the Comptroller objected to DeFoe’s failure to provide adequate information concerning these admitted payoffs or the parties involved therein, although DeFoe provided assurances that no such payments had been made since 1986. In connection with its contested Federal tax liability, appellant maintains that portions of that liability were write-offs of these illegal payments.
General Municipal Law § 103 requires that all contracts for public work involving an expenditure of more than $20,000 *763 shall be awarded to the lowest responsible bidder (General Municipal Law § 103 [1]). The Procurement Policy Board Rules define a responsible bidder as "one which has the capability in all respects to perform fully the contract requirements and the business integrity to justify the award of public tax dollars” (9 RCNY 5-02 [b] [l]).[12] The Comptroller may object to the registration of a contract within 30 days of the filing of such contract with the Comptroller (NY City Charter § 328 [c]). Further, chapter 5 of the New York City Charter authorizes the Comptroller to "audit and investigate all matters relating to or affecting the finances of the city, including without limitation the performance of contracts and the receipt and expenditure of city funds” (NY City Charter § 93 [b]; see also, 9 RCNY 2-08 [a]).
An agency has an obligation to consider the responsibility of a bidder, including its skill, judgment and integrity, and may, on the basis of the prior criminal record of some of its principals, rationally reject that bidder (Abco Bus Co. v Macchiarola, 52 NY2d 938, revg on basis of dissenting opn 75 AD2d 831). In Abco (supra) the Board of Education of the City of New York denied award of a City contract to Abco Bus Company because the Board determined that, although the lowest bidder, Abco was not the lowest responsible bidder. After submitting the lowest of all publicly solicited bids, Abco was initially awarded a contract to transport handicapped school children, a contract it had been awarded in the past. The Board required a background check of the principals of Abco, which disclosed that two of Abco’s principals, who collectively owned 75% of Abco, had prior criminal records.[13] The Board notified Abco of the denial of the award of the contract and Abco sued. Supreme Court awarded Abco the contract on the condition that one of its principals divest himself of his interest in the corporation.
*764 The Appellate Division, with one Justice dissenting, affirmed, holding that the actions of the Board, in denying Abco the contract, were arbitrary and capricious. Justice Hopkins dissented and would have reversed, finding that the Board was entitled to take into consideration the criminal history of Ab-co’s principals. This Court reversed on the basis of the Appellate Division dissent (see also, Matter of LaCorte Elec. Constr. & Maintenance v County of Rensselaer, 195 AD2d 923, lv denied 82 NY2d 660 ["a bidder’s honesty, integrity, good faith and fair dealing are valid considerations regarding whether a lowest bidder is a responsible bidder, and a criminal investigation or indictment can provide a rational basis for finding that such bidder is not responsible”]).
In Abco (supra) the Court used a prior lack of integrity to make a finding of present lack of integrity under the responsible bidder standard there applicable. While the Comptroller is not authorized to make a responsibility determination under the procurement rules, here the Comptroller, pursuant to the Charter’s provisions, objected to the registration of DeFoe’s contracts based on a finding of past corrupt activity which was continuing to the present. The Mayor then refused to approve the registration of the contracts.
Under New York City Charter § 328, the Comptroller had the duty and authority to review this contract and object to it. "The comptroller may * * * object in writing to the registration of the contract, if* * * there is sufficient reason to believe that there is possible corruption in the letting of the contract or that the proposed contractor is involved in corrupt activity” (NY City Charter § 328 [c]). Based on the information before her, the Comptroller objected to the registration of appellant’s contract, determining that appellant’s participation in corrupt activity did not "justify the award of public tax dollars.” The Comptroller communicated such objection to the Mayor and the Mayor declined to require registration of the contract. The Comptroller performed a lawful duty and acted within her authority and responsibility. Neither the Comptroller nor the Mayor acted in an arbitrary or capricious manner and both determinations are supported by the record.
Accordingly, the order of the Appellate Division should be affirmed, with costs.
Chief Judge Kaye and Judges Simons, Titone, Bellacosa, Levine and Ciparick concur.
Order affirmed, with costs.

. DeFoe Corporation is incorporated under the laws of the State of New York with its principal office in Mount Vernon, New York. American Bridge Company is incorporated under the laws of the State of Delaware with its principal office in Pittsburgh, Pennsylvania.

. The Madison Avenue Bridge connects New York County (Manhattan) and Bronx County.

. The Responsibility Certification was signed by Peter Oppizzi, president and director, Charles Androsiglio, vice-president and director, and by John Amicucci, Jay Haft, Philip Alvarez, Louis Bonomini and Hugo Cantamessa.

. DeFoe agreed to bar Dario Cioti (former president and director who pleaded guilty in 1988 to personal income tax evasion) from any involvement in decisions on DeFoe’s bidding or bid prices or respecting DeFoe’s construction projects, business dealings with its customers, or daily operations. DeFoe agreed that Louis Bonomini (former vice- president, who pleaded guilty in 1990 to personal income tax evasion), Hugo Cantamessa (former vice-president who pleaded guilty in 1990 to personal income tax evasion) and Philip Alvarez, former vice-president of. DeFoe, would refrain from any involvement in decisions on bidding or bid prices by DeFoe and would not assume new positions as directors or executive officers of DeFoe. DeFoe further agreed that John Amicucci (current vice-president who pleaded guilty in 1990 to personal income tax evasion) would refrain from any involvement in DeFoe business involving the City of New York during the term of the certification.

. A VENDEX questionnaire contains background information about a business entity and its principal owners, officers, affiliates and subcontractors. This questionnaire is used to assist contracting officers in making the determination of responsibility and to permit compliance with local law concerning creation and maintenance of a computerized database concerning contractor background (9 RCNY 5-02 [e]).

. In March 1992, three contracts were awarded to DeFoe Corp. for repairs to the Hunts Point Bridge (March 1, 1992), the Gerard River Bridges (March 20, 1992), the Longwood Bridge and the Tiffany Bridge (March 31, 1992).

. Section 328 (c) provides in part: "c. The comptroller may, within thirty days of the date of filing of the contract with the comptroller’s office, object in writing to the registration of the contract, if in the comptroller’s judgment there is sufficient reason to believe that there is possible corruption in the letting of the contract or that the proposed contractor is involved in corrupt activity. Such objection shall be delivered within such thirty day period to the mayor setting forth in detail the grounds for the comptroller’s determination.”

. New York City Charter § 328 (a) provides in part: "a. No contract or agreement executed pursuant to this charter or other law shall be implemented until (1) a copy has been filed with the comptroller and (2) either the comptroller has registered it or thirty days have elapsed from the date of filing, whichever is sooner, unless an objection has been filed pursuant to subdivision c of this section.”

. Therefore, appellant contends, 27 days had elapsed by April 20, 1993, when NYCDOT withdrew the contract, leaving only three days within the 30-day period when the contract was resubmitted in December 1993.

. Additionally, John and Rosemary Amicucci are beneficiaries of the blind trust. Pursuant to the "Responsibility Certification,” the Amicuccis are authorized, with the approval of NYCDOT, to select the trust administrator (trustee). Further, Rosemary Amicucci is the daughter of Dario Cioti.

. Citing the City’s mandate under the Procurement Policy Board Rules (9 RCNY 5-02 [a] [1]) to contract with only responsible vendors, the Comptroller highlighted business integrity as a specific factor NYCDOT should consider in assessing vendor responsibility (9 RCNY 5-02 [b] [2] [vi]).

. Factors affecting a contractor’s responsibility may include financial resources; technical qualifications; experience, organization, material, equipment, facilities and personnel resources and expertise; a satisfactory record of performance; a satisfactory record of business integrity; the existence of accounting and auditing procedures adequate to control property, funds or other assets; and compliance with requirements for the utilization of small, minority-owned and women-owned businesses as subcontractors (9 RCNY 5-02 [b] [2]).

. One principal, who owned 50% of Abco, was convicted of falsifying information on a Federal Housing Administration loan application and of driving while intoxicated. The other principal, who owned 25% of Abco, had been convicted of conspiracy, involving the obstruction of interstate commerce, income tax evasion and possession of stolen property.