◼ In the Matter of JOSEPHINE THOMAS, Appellant, v NEW YORK CITY DEPARTMENT OF EDUCATION et al., Respondents. [946 NYS2d 114]—

Order and judgment (one paper), Supreme Court, New York County (Judith J. Gische, J.), entered August 31, 2011, which denied the petition seeking a judgment directing respondents to provide legal representation and reimbursement for legal fees and expenses incurred in defense of a civil action arising out petitioner-paraprofessional's discipline of a student, and dismissed the proceeding brought pursuant to CPLR article 78, affirmed, without costs.

The court correctly determined that Education Law § 2560, which incorporates by reference General Municipal Law § 50-k, and Education Law § 3028, do not conflict and should be read together and "applied harmoniously and consistently" (*Alweis v Evans*, 69 NY2d 199, 204 [1987]). "It is the duty of the courts to so construe two statutes that they will be in harmony, if that can be done without violating the established canons of statutory interpretation" (McKinney's Cons Laws of NY, Book 1, Statutes § 398, Comment).

It is a fundamental rule of statutory construction that a court, "in interpreting a statute, should attempt to effectuate the intent of the Legislature" (*Patrolmen's Benevolent Assn. of City of N.Y. v City of New York*, 41 NY2d 205, 208 [1976]). The plain meaning of the statutory language is " 'the clearest indicator of legislative intent' " (*Matter of Smith v Donovan*, 61 AD3d 505, 508 [2009], *lv denied* 13 NY3d 712 [2009], quoting *Majewski v Broadalbin-Perth Cent. School Dist.*, 91 NY2d 577, 583 [1998]).

Both Education Law §§ 3028 and 2560 provide for the legal representation and indemnification of Board of Education employees. However, they each set forth different circumstances under which such representation and indemnification are to be provided.

Education Law § 3028 provides entitlement to representation and indemnification for any civil or criminal suit filed against a board of education "arising out of disciplinary action" that the employee has taken against a student "while in the discharge of his [or her] duties within the scope of his [or her] employment."

Education Law § 2560 (1), as amended in 1979, provides for representation and indemnification for board of education employees in a city having a population of one million or more "pursuant to the provisions of, and subject to the conditions, procedures and limitations contained in section fifty-k of the general municipal law."

General Municipal Law § 50-k (2) and (3) provide a uniform standard for legal representation and indemnification of employees of the City of New York. Such representation and indemnification shall be provided for acts or omissions that the Corporation Counsel determines "occurred while the employee was acting within the scope of his [or her] public employment and in the discharge of his [or her] duties and was not in violation of any rule or regulation of his [or her] agency at the time the alleged act or omission occurred."

When read together, it is clear that, pursuant to Education Law § 3028, a board of education must provide legal representation and pay attorney's fees and expenses incurred in the defense of an employee in any action arising out of a disciplinary action taken against a student by an employee while acting in the scope of his or her employment and in the discharge of his or her duties, *unless*, pursuant to Education Law § 2560 (1), the employee is a member of a board of education in a city having a population of one million or more, and, pursuant to General Municipal Law § 50-k, he or she violated any rule or regulation of the agency (*see Matter of Sagal-Cotler v Board of Educ. of the City School Dist. of the City of N.Y.*, 96 AD3d 409 [2012] [decided simultaneously herewith]; *Matter of Zampieron v Board of Educ. of the City School Dist. of the City of N.Y.*, 30 Misc 3d 1210[A], 2010 NY Slip Op 52338[U], *8 [2010]).

Here, because petitioner was employed as a paraprofessional by the New York City Department of Education (DOE), Education Law § 2560 (1) applies. Therefore, in order to obtain legal representation pursuant to the statute, petitioner must meet

three requirements: (1) she must be acting within the scope of her employment; (2) in the discharge of her duties; and (3) not be in violation any rule or regulation of the DOE at the time of the incident. As Supreme Court correctly found, petitioner was acting within the scope of her employment since the incident occurred in a classroom. However, the act of hitting a child on the head during a lesson violated DOE Chancellor's Regulation A-420 as well as a statewide rule prohibiting corporal punishment (*see* 8 NYCRR 19.5 [a] [2]), and therefore was not undertaken in the discharge or furtherance of her duties as a school employee, whether as an act of discipline or, as the dissent contends, to get the child's attention (*cf. Blood v Board of Educ. of City of N.Y.*, 121 AD2d 128 [1986]). Although petitioner denied at the time, and continues to deny ever striking the child, the record shows that the allegations against her were substantiated and that she was transferred to another building as a result of the incident.

In an attempt to fit this case within the parameters of our decision in *Blood v Board of Educ. of City of N.Y.* (121 AD2d 128 [1986], *supra*), the dissent creates a scenario wherein petitioner "[a]t worst, . . . became annoyed at [the child's] inattentiveness and used her hand to direct him." According to the dissent, the incident was nothing more than a "natural and foreseeable incident of her work" and was "at most, an impulsive act designed to get the attention of an unfocused student and consistent with the teaching task she was assigned to perform," thus bringing her actions within the scope of her duties. Such a scenario, however, is not supported by the record and ignores the fact that petitioner's actions violated two regulations prohibiting corporal punishment.

As noted, petitioner maintains that she never struck the child. The only reference to the child's inattentiveness, aside from petitioner's brief, is a statement from a witness, another kindergarten student, contained in a counselor's report that the child "was not listening and Ms. Thomas hit him in the forehead with the back of her hand and [the child] said that it hurt." Petitioner, in her response to the reassignment, stated that the child "was very frustrated with the work." There is no indication that the student was not paying attention or that his behavior was a cause for discipline. This is a far different set of facts from *Blood*, where a teacher, who had become angry at a student, grabbed and carelessly swung the child's book bag and accidentally struck another student in the eye. Notably, in *Blood,* the teacher's conduct in striking the other student was clearly accidental, and no disciplinary action was taken as a result of

the incident (121 AD2d at 131, 133). Here, the striking was intentional and petitioner was disciplined.

While it is true, as the dissent points out, that some nisi prius courts have found that Education Law § 3028 is the applicable statute despite the population requirements of Education Law § 2560 (1), those cases are easily distinguishable from the present case. For example, *Morel v City of New York* (2010 NY Slip Op 32079[U] [Sup Ct, NY County 2010]), involved a teacher, Ramon Morel, who allegedly punched and shoved a 14-year-old female student while ushering her and her friends out of a gym after a basketball game. After a DOE investigation, the allegations were substantiated. A lawsuit was commenced by the student against Morel and he requested representation. The Corporation Counsel denied the request on the sole ground that Morel's action were not within the ambit of General Municipal Law § 50-k (2). The IAS court found that Education Law § 3028 was controlling (2010 NY Slip Op 32079[U], *4-5). The basis of the court's determination was that "the DOE, in over a year since the incident, had not brought disciplinary charges against Morel," and "there is no evidence that Corporation Counsel had a factual basis to determine that Morel was acting outside the scope of his employment when he pushed [the student] out of the gym." (*Id.* at *7.)

In *Matter of Inglis v Dundee Cent. School Dist. Bd. of Educ.* (180 Misc 2d 156 [Sup Ct, Yates County 1999]), the teacher, after directing a student to stop playing a piano in the classroom, slapped the student. When criminal charges of harassment were filed against the teacher, she requested representation, which the school district denied on the basis that she was not acting within the scope of her employment when she slapped the student. The teacher brought an article 78 proceeding to have the district reimburse her for her legal expenses in defending the harassment charge, which ultimately was adjourned in contemplation of dismissal (180 Misc 2d at 157). In granting the petition, the court found that the teacher was acting within the scope of her employment and that even accepting the district's position that slapping a student was a violation of the statewide prohibition against corporal punishment, "[s]uch an act is one that the School District could reasonably anticipate" (*id.* at 158-159). Significantly, there is no mention as to whether the teacher was disciplined by the respondent school district.

Other courts have held that Education Law § 2560 (1) is the controlling statute governing a petitioner's right to legal representation and indemnification by respondents (*see e.g. Matter of Martin v Board of Educ. of the City School Dist. of the City of*

*N.Y.*, 2011 NY Slip Op 30983[U] [Sup Ct, NY County 2011]; *Matter of Zampieron v Board of Educ. of the City School Dist. of the City of N.Y.*, 30 Misc 3d 1210[A], 2010 NY Slip Op 52338[U] [Sup Ct, NY County 2010]). Indeed, section 2560 and General Municipal Law § 50-k reflect the Legislature's intent that there be one uniform provision dealing with the representation and indemnification of New York City employees, and that legal representation and indemnification be denied in those cases where the individual had violated an agency rule or regulation (*see* Letter from Mayor, Bill Jacket, L 1979, ch 673).

Based upon the foregoing, it cannot be said that the decision of the Corporation Counsel in denying representation to petitioner was erroneous. In an article 78 proceeding, the proper standard of judicial review is "whether a determination was made in violation of lawful procedure, was affected by an error of law or was arbitrary and capricious or an abuse of discretion" (CPLR 7803 [3]; *Matter of DeFoe Corp. v New York City Dept. of Transp.*, 87 NY2d 754 [1996]). Arbitrary and capricious action is taken "without sound basis in reason and is generally taken without regard to the facts" (*Matter of Pell v Board of Educ. of Union Free School Dist. No. 1 of Towns of Scarsdale & Mamaroneck, Westchester County*, 34 NY2d 222, 231 [1974]).

The Corporation Counsel is empowered by General Municipal Law § 50-k (2) to make factual determinations in the first instance as to whether a petitioner violated any agency rule or regulation, which "determination may be set aside only if it lacks a factual basis, and in that sense, is arbitrary and capricious" (*Matter of Williams v City of New York*, 64 NY2d 800, 802 [1985]). Although petitioner denies she struck the child, the allegations against her were "substantiated" at the conclusion of an investigation. Significantly, petitioner failed to challenge the disciplinary findings against her.

Accordingly, respondents' determination denying petitioner legal representation and indemnification in a civil action arising out of this incident had a rational basis and was not arbitrary and capricious, an abuse of discretion, or contrary to law (*see Perez v City of New York*, 43 AD3d 712, 713 [2007], *lv denied* 10 NY3d 711 [2008]). Concur—Andrias, J.P., Sweeny and Manzanet-Daniels, JJ.

Moskowitz and Freedman, JJ., dissent in a memorandum by Freedman, J., as follows: I respectfully dissent and would reverse Supreme Court's judgment and order denying the petition, grant the petition, and direct respondents to provide petitioner with legal representation and indemnification in connection with her defense in a civil action.

The following is undisputed: petitioner, a paraprofessional employed by the City Department of Education for 23 years, had been assigned to Public School 94 in the Bronx since 2001. On May 14, 2009, a kindergarten student at the school told a counselor that, a few days before, petitioner had been teaching mathematics concepts to a group composed of the student and a few others. The student reported that "when he was doing the wrong thing," petitioner "hit" him on the head with the back of her hand. Thereafter, the child's mother filed a formal complaint that petitioner had used corporal punishment. Petitioner denied the charge and continues to deny it, but an investigation by the Department of Education found that the charge was "substantiated" by a witness who confirmed the student's account. In a letter dated May 21, 2009, the principal of the school informed petitioner that she was being reassigned to another part of the school and that a copy of the letter would be placed in her personnel file. No other sanctions were imposed.

In April 2010, the student and his mother brought a civil action in Supreme Court, Bronx County against petitioner and respondents New York City and the City Department of Education alleging pain and suffering and mental anguish and seeking both compensatory and punitive damages.*

In May 2010, petitioner requested that respondents provide her with legal representation in connection with the lawsuit, but in a October 2010 letter the City's Law Department denied the request "[p]ursuant to Section 50-k of the General Municipal Law."

In January 2011, petitioner commenced this CPLR article 78 proceeding in which she seeks an order directing respondents to defend and indemnify her pursuant to Education Law § 3028. In August 2011, Supreme Court denied the petition and dismissed the proceeding on the ground that the Corporation Counsel had a rational basis to find that petitioner had struck the student in violation of regulations prohibiting corporal punishment (8 NYCRR 19.5 [a] [2]; NY City Dept of Educ, Chancellor's Reg A-420). The court found that, under Education Law § 2560 and General Municipal Law § 50-k, petitioner was not entitled to a defense or indemnification because the claims in the civil lawsuit arose from her unlawful act of corporal punishment while employed by the New York City Board of Education.

Education Law § 3028 provides that "[n]otwithstanding any

---

* Plaintiffs claim that petitioner's act caused much more injury than one would normally expect from a single tap or light blow to a child's head.

inconsistent provision of any general, special or local law," each New York state school district shall provide legal counsel for, and pay counsel's fees and expenses incurred in, defending an employee of the district's schools in a civil action "arising out of disciplinary action taken against any pupil of the district" while the employee is discharging his duties "within the scope of his employment."

Education Law § 2560 (1) provides that "[n]otwithstanding any inconsistent provision of law, general, special or local," an employee of a school board "in a city having a population of one million or more" is "entitled to legal representation and indemnification pursuant to the provisions of, and subject to the conditions, procedures and limitations contained in [General Municipal Law § 50-k]." General Municipal Law § 50-k (2), which section 2560 (1) incorporates by reference, requires the City of New York to defend its employees in civil actions arising from "any alleged act or omission which the corporation counsel finds occurred while the employee was acting within the scope of his public employment and in the discharge of his duties and was not in violation of any rule or regulation of his agency." As indicated, the denial in this case was based on petitioner's purported violation of the regulation against the use of corporal punishment.

The trial court acknowledged that, "[u]pon initial examination," sections 3028 and 2560 are "inconsistent," but held that, since section 2560 only affects employees of the New York City Board of Education, the statute controls because it is more narrowly applicable than section 3028.

The majority does not find sections 3028 and 2560 to be in conflict and instead attempts to harmonize them by construing section 2560 as an exception to the general rule set forth in section 3028. As the majority reads the statutes, a board of education must defend and indemnify an employee in an action that arose from disciplinary action that the employee took against a student in the scope of the employee's employment (pursuant to section 3028), *unless* the employee worked for the New York City Board of Education and violated a regulation of that agency (pursuant to section 2560).

I disagree with the reasoning of both the trial court and the majority. As a threshold matter, I find that the majority's attempt to harmonize the statutes fails because their plain language renders them irreconcilable. Section 2560 cannot be read as an exception to section 3028 because both statutes apply "[n]otwithstanding any inconsistent provision of law" and accordingly they are mutually exclusive.

Since the statutes conflict, it must be determined which of them applies pursuant to the principle that "in a conflict between a statute of general applicability and one of special applicability, the special statute controls" (*Matter of Board of Mgrs. of Park Place Condominium v Town of Ramapo*, 247 AD2d 537, 537 [1998]; *see Delaware County Elec. Coop. v Power Auth. of State of N.Y.*, 96 AD2d 154, 163-164 [1983], *affd* 62 NY2d 877 [1984]). Contrary to the trial court's finding, Education Law § 3028 is more specific because substantively it applies only to claims arising from disciplinary action taken against students, whereas Education Law § 2560 and General Municipal Law § 50-k, as incorporated therein, apply generally to all claims against New York City Board of Education employees that arise from acts within the scope of their employment. I note that a number of nisi prius courts that have considered the two Education Law provisions in similar circumstances have also concluded that section 3028 controls (*see Matter of Sagal-Cotler v Board of Educ. of the City School Dist. of the City of N.Y.*, 2010 NY Slip Op 32657[U] [Sup Ct, NY County 2010]; *Morel v City of New York*, 2010 NY Slip Op 32079[U] [Sup Ct, NY County 2010]; *Matter of Inglis v Dundee Cent. School Dist. Bd. of Educ.*, 180 Misc 2d 156 [1999]).

Here, as the majority agrees, petitioner was acting within the scope of her employment. The majority's assertion that petitioner's action did not occur while she was acting in the discharge of her duties belies common sense. When the purported event occurred, petitioner was teaching the student mathematical concepts. At worst, she became annoyed at his inattentiveness and used her hand to direct him. Thus, what occurred was a natural and foreseeable incident of her work (*see Blood v Board of Educ. of City of N.Y.*, 121 AD2d 128, 130 [1986]). In *Blood*, when a teacher who was angered by a student snatched his book bag from him, the bag struck another student and injured her (121 AD2d at 130-131). Holding that the teacher was entitled to a defense in the ensuing civil lawsuit, this Court found that her actions fell within the scope of her employment because "it is not so unusual an occurrence that a teacher loses her temper with her class," and further recognized that "displays of anger . . . cannot be regarded as other than natural and sometimes necessary incidents of a teacher's work" (*id.* at 131).

In this case, as in *Blood*, petitioner's action was, at most, an impulsive act designed to get the attention of an unfocused student and consistent with the teaching task she was assigned to perform; thus it was in furtherance of the discharge of her

duties. The majority claims that this characterization was based on the kindergartner's report. However, the report may well have been the major source of the "substantiation" that the principal found.

Accordingly, I would reverse. **[Prior Case History: 33 Misc 3d 629.]**